<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MICHAEL A. ROMERO,           :
                             :     Civil Action No. 09-1041 (KSH)
          Plaintiff,   :
                             :
          v.            :     **OPINION**
                             :
GEORGE HAYMAN, et al.,     :
                             :
          Defendants.  :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Michael A. Romero
New Jersey State Prison
P.O. Box 861
Trenton, New Jersey

**HAYDEN**, District Judge

    Plaintiff Michael A. Romero, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. §1915(g), the Court will grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be

granted, or because it seeks monetary relief from a defendant who
is immune from such relief.

I.  <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's
Complaint and are accepted as true for purposes of this review.

While confined at New Jersey State Prison, Plaintiff was in
possession of certain undescribed literature related to the Latin
Kings gang.  Plaintiff alleges that he was in possession of this
literature because it is part of his criminal case.[1]  Apparently,
at some point, some unnamed corrections officers took possession
of some of Plaintiff's documents and charged him with some type
of offense related to possession of this literature or with being
a member of the Latin Kings gang.[2]

In addition, Plaintiff alleges that the fact that
corrections officers went through the legal documents taken from
him is evidenced by the fact that several pages of his trial
transcript were missing from the documents returned to him.  On a
date not specified, Plaintiff submitted an Inmate Request Form

---

[1] According to the New Jersey Department of Corrections
Inmate Locator, Plaintiff is presently serving a life sentence
for murder and related offenses.

[2] Plaintiff does not allege what charges were levelled
against him.  The Court notes, however, that it is a serious
infraction under New Jersey prison regulations for an inmate to
"participat[e] in an activity related to a security threat
group," N.J.A.C. 10A:4-4.1(.101), or to "possess[] or exhibit[]
anything related to a security threat group," N.J.A.C. 10A:4-
4.1(.011).

complaining about his missing legal documents; however, he never received a response.

Plaintiff alleges that he was placed in some combination of protective custody, pre-hearing detention and/or temporary close custody from approximately July 17, 2007, until approximately July 26, 2007.  Plaintiff alleges that after a hearing on July 17, 2007, he was found "guilty" and returned to pre-hearing detention.  Plaintiff alleges that he made several inquiries about his status during the ensuing days, but that he did not receive any meaningful response until July 23, 2007, when Defendant Sergeant Poretti came to his cell with some "bogus" reports and told him he would have a hearing on July 26, 2007. Plaintiff does not specifically describe the July 26, 2007, hearing or its outcome.  Instead, he alleges that:

> After I began asking for copies of incidents reports and information in general surrounding my placement into PC, I was shortly thereafter transferred to the [Security Threat Group Management Unit] at NSP where I have been since.  Once I arrived at NSP, it became clear that SID was fabricating reports on me because I refused to speak to them.

(Complaint, ¶ 24.)

Plaintiff asserts: (1) that he was deprived of fair hearings, in violation of the Due Process Clause of the Fourteenth Amendment, (2) that his Sixth Amendment rights were violated by the confiscation of his legal documents and by confining him to segregation and to the Security Threat Group

Management Unit without cause, (3) that his First Amendment rights were violated when he was placed in segregation and the STGMU for complaining about defendants' actions and inactions.

Plaintiff names as defendants: New Jersey Department of Corrections Commissioner George Hayman, Administrator Larry Glover, Chief Director of Operations Paul Marks, Sergeant Poretti, Sergeant Tyson, Senior Investigations Division Investigator Dolce, and Disciplinary Hearing Officer John Doe. Plaintiff seeks declaratory and injunctive relief, in the form of an order for his release from STGMU, and all other just and proper relief.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must

4

"accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

In addition, any complaint must comply with the pleading requirements of the Federal Rules of Civil Procedure.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis, 372 F.3d 218, 236 n.12 (3d Cir. 2004). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

> While a complaint ... does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, see Papasan v. Allain, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level ... .

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).

The Supreme Court has demonstrated the application of these general standards to a Sherman Act conspiracy claim.

In applying these general standards to a § 1 [conspiracy] claim, we hold that stating such a claim requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made.  Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement.  And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that a recovery is very remote and unlikely." ...  It makes sense to say, therefore, that an allegation of parallel conduct and a bare assertion of conspiracy will not suffice.  Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.  Hence, when allegations of parallel conduct are set out in order to make a § 1 claim, they must be placed in a context that raises a suggestion of a preceding agreement, not merely parallel conduct that could just as well be independent action.

The need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief."  A statement of parallel conduct, even conduct consciously undertaken, needs some setting suggesting the agreement necessary to make out a § 1 claim; without that further circumstance pointing toward a meeting of the minds, an account of a defendant's commercial efforts stays in neutral territory. ...

Twombly, 550 U.S. at 556-57 (citations and footnotes omitted).

The Court of Appeals for the Third Circuit has held, in the context of a § 1983 civil rights action, that the Twombly pleading standard applies outside the § 1 antitrust context in which it was decided.  See Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) ("we decline at this point to read

<u>Twombly</u> so narrowly as to limit its holding on plausibility to the antitrust context").

> Context matters in notice pleading.  Fair notice under Rule 8(a)(2) depends on the type of case -- some complaints will require at least some factual allegations to make out a "showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests."  Indeed, taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S.Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8.  Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief.  We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests.

<u>Phillips</u>, 515 F.3d at 232 (citations omitted).

More recently, the Supreme Court has emphasized that, when assessing the sufficiency of <u>any</u> civil complaint, a court must distinguish factual contentions -- which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted -- and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).  Although the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  <u>Id.</u> at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by

identifying pleadings that, because they are no more than

conclusions, are not entitled to the assumption of truth."  Id.

> Therefore, after Iqbal, when presented with a
> motion to dismiss for failure to state a claim,
> district courts should conduct a two-part analysis.
> First, the factual and legal elements of a claim should
> be separated.  The District Court must accept all of
> the complaint's well-pleaded facts as true, but may
> disregard any legal conclusions.  Second, a District
> Court must then determine whether the facts alleged in
> the complaint are sufficient to show that the plaintiff
> has a "plausible claim for relief."  In other words, a
> complaint must do more than allege the plaintiff's
> entitlement to relief.  A complaint has to "show" such
> an entitlement with its facts.  See Phillips, 515 F.3d
> at 234-35.  As the Supreme Court instructed in Iqbal,
> "[w]here the well-pleaded facts do not permit the court
> to infer more than the mere possibility of misconduct,
> the complaint has alleged-but it has not
> 'show[n]'-'that the pleader is entitled to relief.'"
> This "plausibility" determination will be "a
> context-specific task that requires the reviewing court
> to draw on its judicial experience and common sense."

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)

(citations omitted).

> Rule 10(b) of the Federal Rules of Civil Procedure provides:

> A party must state its claims ... in numbered
> paragraphs, each limited as far as practicable to a
> single set of circumstances.  ...  If doing so would
> promote clarity, each claim founded on a separate
> transaction or occurrence ... must be stated in a
> separate count or defense.

> Rule 18(a) controls the joinder of claims.  In general, "[a]

party asserting a claim ... may join as independent or

alternative claims, as many claims as it has against an opposing

party."

Rule 20(a)(2) controls the permissive joinder of defendants in pro se prisoner actions as well as other civil actions.

> Persons ... may be joined in one action as defendants if:
>     (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>     (B) any question of law or fact common to all defendants will arise in the action.

(emphasis added). See, e.g., Pruden v. SCI Camp Hill, 252 Fed.Appx. 436 (3d Cir. 2007); George v. Smith, 507 F.3d 605 (7th Cir. 2007).

In actions involving multiple claims and multiple defendants, Rule 20 operates independently of Rule 18.

> Despite the broad language of rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.  If the requirements for joinder of parties have been satisfied, however, Rule 18 may be invoked independently to permit plaintiff to join as many other claims as plaintiff has against the multiple defendants or any combination of them, even though the additional claims do not involve common questions of law or fact and arise from unrelated transactions.

7 Charles Alan Wright, Arthur R. Miller, and Mary Kay Kane, Federal Practice and Procedure, § 1655 (3d ed. 2009).

Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  Denton v. Hernandez, 504 U.S. 25, 34 (1992); Grayson v. Mayview State Hospital, 293 F.3d 103, 108 (3d

Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane</u>
<u>v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal
pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg</u>
<u>County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat</u> <u>superior</u>.  <u>See</u> <u>City of</u>
<u>Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.</u>
<u>New York City Department of Social Services</u>, 436 U.S. 658, 690-

91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).  "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).  Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).[3]

IV.  ANALYSIS

A.   Confinement in Segregation and the STGMU

Plaintiff alleges that he did not receive due process before being placed in segregated custody (protective custody, prehearing detention, temporary close custody) and in the Security Threat Group Management Unit.  (Complaint, ¶¶ 4, 5, 26.) He alleges that he did not receive a fair hearing prior to these custody placements.  More specifically, he alleges that

---

[3] The claims against Defendants Hayman, Marks, Tyson, and Dolce appear to be based solely upon an untenable theory of vicarious liability, and are dismissible on that basis alone.

"(a) defendants permitted reports to be fabricated and presented as evidence during plaintiff's disciplinary and PC hearings; and (b) defendants failed to adequately investigate the bogus allegations against plaintiff." (Complaint, ¶ 26.) The factual allegations are not sufficient to state a claim.

A liberty interest protected by the Due Process Clause may arise from either of two sources: the Due Process Clause itself or State law. See Hewitt v. Helms, 459 U.S. 460, 466 (1983); Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir. 1999).

With respect to convicted and sentenced prisoners, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v. Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494 U.S. 210, 221-22 (1990)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary administration of psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94 (1980)(prisoner has liberty interest under the Due Process Clause in freedom from involuntary transfer to state mental hospital coupled with mandatory treatment for mental illness, a punishment

carrying "stigmatizing consequences" and "qualitatively different" from punishment characteristically suffered by one convicted of a crime). See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).

States, however, may confer on prisoners liberty interests that are protected by the Due Process Clause.  "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest).  In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release

13

to the general population after 20 days in the absence of a misconduct charge.  The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.  Id.

It is well established that a prisoner possesses no liberty interest arising from the Due Process Clause in a particular custody level or place of confinement.  See, e.g., Olim v Wakinekona, 461 U.S. 238, 245-46 (1983); Hewitt, 459 U.S. at 466-67; Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Montanye, 427 U.S. at 242.

Similarly, the Court of Appeals for the Third Circuit has held that New Jersey prisoners have no liberty interest, under either the United States Constitution or state law, in avoiding transfer to the Security Threat Group Management Unit, even without a hearing.  See Fraise v. Terhune, 382 F.3d 506, 522-23 (3d Cir. 2002).  Thus, Plaintiff has failed to state a claim for deprivation of liberty without due process in connection with his confinement in the STGMU. As he is subject to confinement in the STGMU even without a hearing, see Fraise v. Terhune, he cannot

14

base a due process claim upon any alleged unfairness in the hearing he received.[4]

In addition, "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." <u>Sandin</u>, 515 U.S. at 485 (upholding prisoner's sentence of 30 days' disciplinary segregation following a hearing at which he was not permitted to produce witnesses). To the extent Plaintiff asserts that he was deprived of a liberty interest without due process when he was confined in a combination of protective custody, pre-hearing detention and/or temporary close custody from approximately July 17, 2007, until approximately July 26, 2007, a period of ten days, Plaintiff has failed to allege any facts suggesting that the conditions of his administrative segregation imposed "atypical and significant" hardships on him. Again, as Plaintiff has not alleged facts suggesting that he was deprived of any liberty interest, he cannot base a due process claim upon any alleged unfairness in the associated hearing. Accordingly, the Complaint fails to state a claim for deprivation of liberty without due process in connection with Plaintiff's short-term

---

[4] In addition, the Court notes that Plaintiff's vague allegations of false reports and deficient investigation, with no other factual allegations regarding the hearing that resulted in his placement in STGMU, are not sufficient to raise a claim of unfairness above the speculative level.

confinement in segregation during July 2007.  See Torres v. Fauver, 292 F.3d 141, 150-52 (3d Cir. 2002).

In addition, with respect to this claim, Petitioner has requested injunctive relief in the form of an order requiring his transfer out of the Security Threat Group Management Unit.  In view of Plaintiff's submission, during the pendency of this matter, of a change of address notice indicating that he had been transferred to New Jersey State Prison, as well as announcements by the New Jersey Department of Corrections, in the public press, of its intention to close the STGMU, this Court ordered Petitioner to show cause why the request for injunctive relief should not be dismissed as moot.  In response, Plaintiff argues merely that other secure units exist and that Defendants could someday place Plaintiff in another such unit.  It is clear that Plaintiff no longer has standing to pursue this claim for injunctive relief.

In order to set forth a viable claim in federal court, a plaintiff must satisfy both the Article III constitutional minimum of a "case or controversy" and any prudential considerations set by the courts.  See Disabled Patriots of America, Inc. v. City of Trenton, 2008 WL 4416459, *2-*3 (D.N.J. 2008).  To satisfy Article III standing, a plaintiff must demonstrate (1) that he has suffered an injury in fact that is (a) concrete and particularized, and (b) actual or imminent, not

16

conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of, that the injury has to be fairly traceable to the defendant's challenged action; and (3) it must be likely as opposed to merely speculative, that the injury will be redressed by a favorable decision. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotations omitted). "Since [the elements of standing] are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof." Lujan, 504 U.S. at 561.

To obtain prospective injunctive relief, a plaintiff must demonstrate a "real and immediate threat" of future injury in order to satisfy the "injury in fact" requirement. City of Los Angeles v. Lyons, 461 U.S. 95, 103-04 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief." Brown v. Fauver, 819 F.2d 395, 400 (3d Cir. 1987). These standing requirements apply to actions seeking injunctive relief under Article III of the ADA. Doe v. National Bd. of Medical Examiners, 199 F.3d 146, 152-53 (3d Cir. 1999).

Here, Plaintiff can no longer establish a real and immediate threat of future injury. He does not dispute that the STGMU has been closed and that he has been transferred to another facility.

17

Nor does he allege any facts suggesting that he faces a real and immediate threat of confinement in another close custody unit.

For all the foregoing reasons, these due process claims will be dismissed with prejudice.

B.   <u>The Sixth Amendment Claim</u>

Plaintiff alleges that the defendants violated his Sixth Amendment rights by "(a) failing to insure that inmates rights are not violated; (b) placing plaintiff in TCC/PHD/PCC without just cause; and (c) confining plaintiff to the STG unit without cause to do the same; and (d) confiscating plaintiff's legal documents." (Complaint, ¶ 28.)

The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence.

To the extent Plaintiff is claiming that the temporary confiscation of his legal documents, with the resulting loss of certain pages of his trial transcript, deprived him of his right of access to the courts, the claim fails because Plaintiff has failed to allege any actual injury with respect to a court action

challenging his conviction or his conditions of confinement.  <u>See</u>
<u>Lewis v. Casey</u>, 518 U.S. 343, 355 (1996).

To the extent Plaintiff alleges some violation of the
attorney-client privilege, he has failed to allege that any of
the legal documents confiscated contained any privileged
documents.

To the extent Plaintiff contends that he was entitled to the
Sixth Amendment procedural protections during his prison
discipline or custody classification hearings, those protections
do not apply in such administrative prison hearings.  <u>See</u> <u>Wolff</u>
<u>v. McDonnell</u>, 418 U.S. 539, 556, 567-69 (1974).

Finally, Plaintiff alleges that defendants violated his
Sixth Amendment rights by "failing to insure" that his rights
were not violated.  To the extent Plaintiff alleges that certain
defendants are liable for failure to supervise and/or train other
defendants, he fails to state a claim.  Where a need for "more or
different training ... is so obvious, and the inadequacy so
likely to result in constitutional violations, that the failure
to train ... can fairly be said to represent official policy,"
<u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390 (1989), and
that failure to train "actually causes injury," a supervisor may
be held liable, <u>Id.</u>  Here, however, Plaintiff fails to state a
claim for a constitutional injury; thus, he fails to state a
claim for failure to train.

In addition, in resolving the issue of supervisory liability,

> the focus must be on adequacy of the training program
> in relation to the tasks the particular officers must
> perform.  That a particular officer may be
> unsatisfactorily trained will not alone suffice to
> fasten liability on the [supervisor], for the officer's
> shortcomings may have resulted from factors other than
> a faulty training program.  ...  Neither will it
> suffice to prove that an injury or accident could have
> been avoided if an officer had had better or more
> training ... .  Moreover, for liability to attach ...
> the identified deficiency in a city's training program
> must be closely related to the ultimate injury.

Id. at 390-91.  Plaintiff alleges nothing more than that one or more particular corrections officers caused him an injury, plainly an insufficient allegation upon which to base liability for failure to train and/or supervise.

Plaintiff has failed to state a Sixth Amendment claim.

C.    The First Amendment Retaliation Claim

Plaintiff alleges that defendants retaliated against him for exercising his First Amendment rights.  (Complaint, ¶ 3.)  More specifically, Plaintiff alleges that Defendants violated his First Amendment rights by: "(a) failing to insure that inmates rights are not violated; (b) placing plaintiff in TCC/PHD/PCC/STG for complaining about defendants actions and inactions." (Complaint, ¶ 28.)

Retaliation claims survive Sandin, even when the retaliatory action does not involve a liberty interest.  Allah v. Seiverling,

229 F.3d 220, 223-24 (3d Cir. 2000).  To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quotation omitted); see also United States Dep't of Transp., ex rel. Arnold v. CMC Eng'g, 564 F.3d 673, 676 (3d Cir. 2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.  Thus, to state a claim for retaliation, a plaintiff must allege "'a chronology of events from which retaliation may be inferred.'" Bendy v. Ocean

County Jail, No. 07-1421, 2009 WL 2170424, *3 (3d Cir. July 22, 2009) (citation omitted).

Here, assuming Plaintiff was engaging in constitutionally-protected activity, Plaintiff nevertheless has failed to allege adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  Nor has Plaintiff alleged a chronology of events from which retaliation could be inferred.  Plaintiff alleges facts demonstrating that his 10-day confinement in the combination of prehearing/protective/temporary close custody was related to pending charges related to his possession of prohibited gang literature.  Plaintiff alleges that a hearing was scheduled for July 26, 2007, strongly suggesting that his transfer to the STGMU resulted from that hearing.  In light of this context, the allegation of a mere temporal connection between Plaintiff's complaints about defendants' actions and inactions, and his transfer to STGMU, is not sufficient to raise his claim of retaliation above the speculative level.  Cf. Gans v. Rozum, No. 06-62J, 2007 WL 257127, *6 (W.D. Pa. Aug. 31, 2007) (mere temporal connection between filing of civil rights complaint and exercise restriction is "too thin a reed" on which to hang a retaliation claim), aff'd, 267 Fed.Appx. 178 (3d Cir.) (unpubl.), cert. denied, 129 S.Ct. 84 (2008); Lopez v. Beard, No. 08-3699, 2009 WL 1705674 (3d Cir. June 18, 2009) (allegation of that denial of visitation on

22

two occasions was in retaliation for filing grievances is frivolous).

Again, to the extent that the allegation that some defendants violated Plaintiff's First Amendment rights by "failing to insure" that his rights were not violated could be construed as a claim that such defendants failed properly to train or supervise other defendants, the allegation fails to state a claim. Plaintiff has failed to state a claim for an underlying violation of his First Amendment rights and he has failed to allege any facts suggesting that the training and supervision are inadequate. See City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989).

V.   CONCLUSION

For the reasons set forth above, all claims will be dismissed with prejudice, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim. It does not appear that Plaintiff could amend his pleading to cure the defects noted herein.

An appropriate order follows.


/s/Katharine S. Hayden
Katharine S. Hayden
United States District Judge

Dated: 4/8/11