NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL A. ROMERO,<br><br>    *Plaintiff*,<br><br> v.<br><br>GEORGE HAYMAN, LARRY GLOVER, PAUL MARKS, SERGEANT TYSON, SERGEANT PORETTI, INVESTIGATOR R. DOLCE, S. MANISCALO,<br><br>    *Defendants*. | Civ. Action No. 09-1041 (KSH)<br><br><br>OPINION |

**Katharine S. Hayden, U.S.D.J.**

  This case is before the Court on remand from the Third Circuit. Proceeding pro se and in forma pauperis, plaintiff Michael A. Romero, a prisoner confined at New Jersey State Prison in Trenton, New Jersey, filed a 42 U.S.C. § 1983 complaint in 2009, alleging various violations of his constitutional rights based upon events that occurred in prison in 2007. [D.E. 1.] This Court previously granted Romero leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) and screened the complaint under its Prison Litigation Reform Act (PLRA) obligations. By opinion and order entered April 8, 2011, this Court dismissed all claims with prejudice and denied leave to amend on the basis of futility. [D.E. 11, 12.]

  On appeal, a divided panel of the Third Circuit affirmed in part, vacated in part, and remanded for further proceedings. *See generally Romero v. Hayman*, 486 F. App'x 981 (3d Cir. 2012) (nonprecedential per curiam). More specifically, while the Circuit agreed that the complaint failed to state a claim upon which relief could be granted, it remanded to permit

1

Romero to replead his first amendment retaliation claim, and he has filed an amended complaint. [D.E. 28].

For the following reasons, the Court finds that the amended complaint shares the defects of the original, and will order it dismissed with prejudice.

## I. BACKGROUND

### A) The Original Complaint

In his original complaint [D.E. 1], Romero asserted that in 2007 he had been in possession of certain literature related to the Latin Kings gang, allegedly because it was related to his criminal case.[1] At some point, unnamed corrections officers took possession of some of this literature and charged Romero with an offense related to possession of this literature or with being a member of the Latin Kings gang. Romero alleged that he subsequently submitted an Inmate Request Form complaining about his missing documents, but never received a response. Romero further alleged that he was placed in some combination of protective custody, pre-hearing detention, and/or temporary close custody from approximately July 17, 2007, until approximately July 26, 2007. He alleged that after a hearing on July 17, 2007, he was found "guilty" and returned to pre-hearing detention. Romero alleged that he made several inquiries about his status during the ensuing days, but that he did not receive any meaningful response until July 23, 2007, when corrections officer Poretti came to his cell with some "bogus" reports and told him he would have a hearing on July 26, 2007. Romero did not specifically describe the July 26, 2007 hearing or its outcome, but did allege that after he began asking for copies of incident reports or information regarding his placement in protective custody, he was transferred

---

[1] Although Romero did not describe the nature of his conviction or the "criminal case" to which the letter was allegedly related, the Court noted that, according to the New Jersey Department of Corrections Inmate Locator, he was serving a life sentence for murder and related offenses.

to the Security Threat Group Management Unit at Northern State Prison, where he remained as of the time he filed the complaint. He alleged that once he arrived at Northern State Prison, it became clear that the Department of Corrections Special Investigations Division (the "Division" or "SID") was fabricating reports about him because he had refused to speak to them. Romero asserted that certain defendants had violated his first amendment rights by placing him in temporary close custody, pre-hearing detention, protective custody, and the Security Threat Group Management Unit for complaining about them and their actions. This Court found that Romero had failed to state a claim upon which relief could be granted and dismissed with prejudice. Romero filed a timely notice of appeal. [D.E. 14.]

  B) <u>Appellate Proceedings</u>

Although Romero's appeal was initially listed for summary action pursuant to 28 U.S.C. § 1915(e)(2) and 3d Cir. L.A.R. 27.4/I.O.P. 10.6, the case was allowed to proceed to briefing. In its eventual decision on appeal, the Third Circuit expressly affirmed this Court's decision on all substantive aspects of Romero's original complaint—including the disposition of his retaliation claims, which were "woefully undeveloped" and failed because "Romero failed to plead both severity of retaliation and the required causal link." *Romero*, 486 F. App'x at 983 (citing three-part constitutional retaliation test of *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)).

The sole point of departure was over whether granting Romero leave to amend his complaint would be futile. This Court had decided that it "does not appear that Plaintiff could amend his pleading to cure the defects noted herein." (Op. 23.) The Third Circuit concurred that "most of Romero's claims [we]re defective in a way that implicates faults of both law and fact, so that amendment would be futile," but was "less certain about the futility of amending the First Amendment retaliation claim." *Romero*, 486 F. App'x at 983. Therefore, "out of an abundance

3

of caution," the Circuit vacated and remanded the Court's decision on the retaliation claims and "remand[ed] for re-pleading of those claims." *Id.* The Circuit further emphasized that it was "in no way compel[ling] the District Court to allow Romero's amended complaint to proceed should it prove defective under § 1915 or other screening statutes." *Id.* at 983 n.2.

C) <u>The Amended Complaint</u>

As a preliminary matter, as compared to the original, Romero's amended complaint [D.E. 28] clarifies that the "John Doe" disciplinary hearing officer originally pleaded (*see* Compl. ¶ 17) is a Department employee named S. Maniscalco (*see* Am. Compl. ¶ 19). The Court has amended the caption accordingly to reflect this revision.

In the amended complaint, Romero alleges that on or about May 23, 2007, while he was confined at New Jersey State Prison, defendant Tyson took Romero to meet with two representatives of the Special Investigations Division. Romero alleges that he told the assembled officers that he did not wish to speak to them, and he declined to sign a "refusal slip." (Am. Compl. ¶¶ 4–5, 21–22.) Romero alleges that about a month later, on June 20, 2007, he wrote a letter to then-Assistant Attorney General Anne Milgram "about his initial complaint," otherwise undescribed. (Am. Compl. ¶ 6.) Romero also alleges that he filed a written complaint with the unnamed administrator of New Jersey State Prison. (Am. Compl. ¶ 23.)

Romero alleges that on July 13, 2007, "in retaliation for" his oral and written complaints and his refusal to become a confidential informant, his cell was searched (by an unnamed person) and he was given a disciplinary charge for possession of security threat group material[2]— a

---

[2] At the time of the events complained of, under New Jersey prison regulations, it was a serious infraction for an inmate to "participat[e] in an activity related to a security threat group," N.J.A.C. § 10A:4-4.1(.101), or to "possess[] or exhibit[] anything related to a security threat group," N.J.A.C. § 10A:4-4.1(.011).

4

"Latin King Manifesto" that was "part of [the] discovery from his criminal trial" and about which the Northern State Prison administrator had been apprised—that was issued by an unnamed person. Romero was placed in pre-hearing detention. He does not state the identity of the individual(s) who searched his cell or wrote the disciplinary charge, but states that named defendant SID Investigator Dolce knew that Romero possessed the Manifesto in connection with his criminal case. (Am. Compl. ¶¶ 7, 18, 24.)

Romero alleges that four days later he was placed on temporary close custody, and that he was placed in protective custody, non-congregate status, in a management control unit, on July 17, 2007. Romero alleges that he was placed in protective custody for retaliatory reasons by Dolce, who Romero alleges has a history of such placements with respect to prisoners who refuse to assist him in investigations. (Am. Compl. ¶¶ 8, 25.)

Romero alleges that on or about July 23, 2007, Poretti came to his cell with some "bogus" reports. When Romero asked why he had been moved, Poretti advised him that he would be getting a hearing on July 26, 2007. Romero alleges that when he asked the housing unit officer why he had been moved, he was told that he had been placed on protective custody status "per SID." (Am. Compl. ¶ 26.)

Although he does not otherwise describe the disciplinary hearing or its result, Romero alleges that defendant Maniscalco failed to conduct a fair hearing. (Am. Compl. ¶ 19.) Romero contends that after he began asking for copies of the incident reports or other information to support his placement on protective custody, he was transferred to Northern State Prison's Security Threat Group Management Unit (STGMU). (Am. Compl. ¶ 28.) After he arrived at Northern State Prison and began speaking to several staff members, "it was clear that 'SID and 'Def.' Dolce fabricated reports to get me to [STGMU] because [I] refused to speak with them."

5

(Am. Compl. ¶ 29.) Romero alleges that his belief was "confirmed" when defendant Paul Marks, whose title was Chief Director of Operations, said that he would look into the situation, but never got back to Romero. (Am. Compl. ¶ 30.)

Romero names as Defendants New Jersey Department of Corrections Commissioner George Hayman, Northern State Prison Administrator Larry Glover,[3] Northern State Prison Director of Operations Paul Marks, New Jersey State Prison Sgt. Tyson, New Jersey State Prison Sgt. Poretti, SID Senior Investigator R. Dolce, and Disciplinary Hearing Officer S. Maniscalco. Romero seeks all appropriate relief.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

The Court discussed the standards for sua sponte dismissal under the PLRA on pages four through 10 of its previous opinion. The analysis mirrors the one for motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Brodzki v. Fox Broad.*, 464 F. App'x 43, 44 (3d Cir. 2012) (nonprecedential per curiam) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).

On this remand, the Third Circuit has directed a review of Romero's amended complaint for sufficiency; that is, whether the new pleading states a claim under the first amendment. Accordingly, the Court's reviews Romero's repleaded retaliation claims applying straight up and down the law of Fed. R. Civ. P. 12(b)(6). In *Ashcroft v. Iqbal*, the Supreme Court held that "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Third Circuit directs that a complaint must allege "sufficient factual

---

[3] Glover is alleged generally to have control of the assignment of inmates to the Security Threat Group unit. (Am. Compl. ¶ 14.)

matter" to show that the claim is facially plausible. *Fowler v. UPMS Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Belmont v. MB Inv. Partners, Inc.,* 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). And while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.,* 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III. DISCUSSION

To make out a first amendment retaliation claim under 42 U.S.C. § 1983, a prisoner must plead facts showing "(1) constitutionally protected conduct, (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the exercise of his constitutional rights and the adverse action taken against him." *Mitchell*, 318 F.3d at 530 (internal quotation marks & alterations omitted). In its prior opinion addressing the retaliation charges from the original complaint, this Court wrote:

> Here, assuming Plaintiff was engaging in constitutionally protected activity, Plaintiff nevertheless has failed to allege adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights. Nor has Plaintiff alleged a chronology of events from which retaliation could be inferred. Plaintiff alleges facts demonstrating that his 10-day confinement in the combination of prehearing/protective/temporary close custody was related to pending charges related to his possession of prohibited gang literature. Plaintiff alleges that a hearing was scheduled for July 26, 2007, strongly suggesting that his transfer to the STGMU resulted from that hearing. In light of this context, the allegation of a mere temporal connection between Plaintiff's complaints about defendants' actions and inactions, and his transfer to STGMU, is not sufficient to raise his claim of retaliation above the speculative level.

(Op. 22.) The Third Circuit agreed that Romero's original complaint "failed to plead both severity of retaliation and the required causal link," thereby falling short of the *Mitchell* standard,

7

*Romero*, 486 F. App'x at 983.[4]  The Third Circuit's decision on appeal is the "law of the case" that this Court must implement in letter and in spirit.  *EEOC v. Kronos Inc.*, 694 F.3d 351, 361 (3d Cir. 2012).  Accordingly, the question before the Court is whether the amended complaint fixes the faults pertaining to the second and third *Mitchell* factors contained in the original complaint.  The Court finds that it does not.

As compared to the original complaint, the amended complaint does contain additional facts that reframe, to a certain degree, Romero's allegations of retaliation.  The detail relating to the May encounter with Tyson and Foley is new, as are allegations that part of the retaliation was due to Romero's refusal to become a confidential informant.  To the extent that he labels certain conduct "retaliation," however, he may not rely on "a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citation omitted).

In its original decision, this Court held that Romero failed to allege adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights.  (Op.

---

[4] The Court assumes, for the purposes of its opinion and in line with the Third Circuit's mandate, that the conduct drawing retaliation was itself constitutionally protected, to the extent that it affected Romero's access to both the courts and the grievance procedures in the prison.  *See, e.g.*, *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) ("A prisoner's right under the First Amendment to petition for redress of grievances under a prison's grievance procedures is clearly established in this court."); *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981) (noting that access to the courts is protected from retaliation).  Nevertheless, as set forth above, the Court notes that the amended complaint more plausibly sets up a claim for retaliation based on Romero's refusal to act as a confidential informant, rather than for his pursuit of internal and external grievances.  The constitutional recognition of *this* "right" appears to be in flux at best. *See, e.g.*, *Pearson v. Welborn*, 471 F.3d 732, 737–38 (7th Cir. 2006) (discussing, without deciding, whether a prisoner has a first amendment right to refuse to act as a confidential informant); *Allah v. Juchenwioz*, 176 F. App'x 187, 189 (2d Cir. 2006) (nonprecedential summary order) ("Neither the Supreme Court nor this Court has ever held that a prisoner enjoys a constitutional right not to become an informant."); *Tennyson v. Rohrbacher*, No. 11-35, 2012 WL 366539, at *6 (W.D. Pa. Jan. 25, 2012) (observing the same for the Third Circuit).  Because the retaliation claims in the original complaint were not well pleaded, the Third Circuit did not have occasion to pass on whether this aspect of Romero's behavior in the prison was constitutionally protected and could draw constitutional scrutiny under 42 U.S.C. § 1983.

22.) Romero had discussed his placement in various kinds of restrictive custody (*see, e.g.*, Compl. ¶¶ 4–6, 18–24), and had specifically pleaded that the actions of the defendants "exacerbate[d] the mental and physical injuries of plaintiff assigned to the STG unit" (Compl. ¶ 7.) But he had not pleaded any details of the restricted custody, nor how the missing pages from his legal material functioned to impede his access to the courts. *See Romero*, 486 F. App'x at 983 ("Romero did indeed fail to plead actual injury relating to his access-to-the-courts claim . . . .").

As the Third Circuit made clear in *Allah*, whether placement in restricted custody or administrative segregation meets the second prong of the retaliation test "depend[s] on the facts of the particular case." *Allah*, 229 F.3d at 225. Thus, when a prisoner "allege[d] that his confinement in administrative segregation resulted, inter alia, in reduced access to phone calls, reduced access to the commissary, reduced access to recreation, confinement in his cell for all but five hours per week, denial of access to rehabilitative programs and, significantly, inadequate access to legal research materials and assistance," a fact finder could "conclude from those facts that retaliatory continued placement in administrative confinement would deter a person of ordinary firmness from exercising his First Amendment rights," and dismissal under the PLRA or 12(b)(6) was inappropriate. *Id.* (internal quotation marks & citation omitted); *see also Bistrian v. Levi*, 696 F.3d 352, 358–59, 376 (3d Cir. 2012) (reiterating that facts similar to those pleaded in *Allah* satisfied the second prong of *Mitchell*); *Jacobs v. Beard*, 172 F. App'x 452, 455 (3d Cir. 2006) (nonprecedential per curiam) (finding, prior to *Twombly*/*Iqbal*, that a prisoner who pleaded that seizure of his legal materials negatively affected a pending lawsuit met the deterrence prong).

In this case, the amended complaint, like the original, contains no detail about the conditions of Romero's confinement. He simply writes that the placements have "violat[ed]" his "constitutional right." (Am. Compl. ¶ 7.) He does not show how placement in "PC" status (Am. Compl. ¶ 25) functioned to deter the exercise of his constitutional rights; the same goes for his time in the Security Threat Group unit (Am. Compl. ¶ 29), about which he says absolutely nothing regarding the privileges denied him, the hindrances he faced, or the conditions of custody in general, and further does not allege background facts suggesting that the placement was designed as a constitutional deterrent.[5] This lack of detail compares unfavorably with (to cite just one example) the allegations in *Mitchell* itself, where the prisoner had claimed that prison officials "placed [him] in a cell unfit for human habitation," one which had "human waste smeared on the walls," was "infested with flies," and rang with the noise of "kicking and banging on the doors by . . . other inmates." *Mitchell*, 318 F.3d at 527–28; *see also Barr v. Diguglielmo*, 348 F. App'x 769, 775 (3d Cir. 2009) (nonprecedential per curiam) (concluding that placement in a tracking program prohibiting participation in any prison proceedings satisfied second retaliation prong); *Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 585 (D.C. Cir. 2002) (holding that reclassification that prevented inmate from obtaining certain jobs, distanced him from his parents, and negatively affected parole possibilities sufficed to show deterrence). And as mentioned above, Romero fails to articulate how missing trial transcript pages impeded his access to the courts. (Am. Compl. ¶ 27.) Indeed, the amended complaint rather conspicuously

---

[5] Although retaliation claims do not depend on the retaliatory conduct itself being a freestanding constitutional tort, *see Mitchell*, 318 F.3d at 530, the Court notes that the Third Circuit has held, in the context of a due process inquiry arising out of summary judgment, that transfer to the STG does not "impose an atypical and significant hardship in relation to the ordinary incidents of prison life," *Fraise v. Terhune*, 283 F.3d 506, 522–23 (3d Cir. 2002) (Alito, J.)—supporting (if not overtaking) the significance of Romero's failure to plead any facts suggesting to the contrary.

10

omits that Romero was meaningfully deterred from exercising his rights to, among other things, pursue court action, continue submitting grievances, or refuse to inform on other prisoners.

While a prisoner need not allege much to surmount the second prong of the retaliation analysis, he needs to allege *something*, especially after *Twombly/Iqbal*, to allow the Court to draw the requisite inferences in his favor. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (observing pre-*Twombly/Iqbal* that an inmate must "allege more than his personal belief that he is the victim of retaliation" because "[m]ere conclus[ory] allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim"). In his original complaint, Romero failed to plead the severity and deterrent power of the adverse action, *Romero*, 486 F. App'x at 983, and the amended complaint suffers from the same defect. Accordingly, the retaliation claim must fail for this reason.

In addition, the amended complaint also fails to set forth a chronology of retaliation sufficient to avoid dismissal under *Twombly/Iqbal*. As before, the Court's analysis rests on the premise, set forth in the Third Circuit's earlier opinion, that the allegations in the original complaint failed to establish "the required causal link" to sustain a retaliation claim. *Romero*, 486 F. App'x at 983. Those allegations included that Romero had been placed in PC status at the request of the Senior Investigations Division, and had been transferred to the STG unit for "refusing to speak to" members of the Division. (Compl. ¶¶ 23–24.) The amended complaint clarifies that the retaliation can allegedly be traced to his May 2007 decision to not talk to agents of the Division, but more than a month and a half passed between the May encounter and the July 13 search of his cell. (*See* Am. Compl. ¶¶ 20–22, 24.)

While he identifies the Division as being behind his placement on PC status (Am. Compl. ¶ 26), his retaliatory allegations are otherwise conclusory and unsupported. The passage of time

11

between the May and July encounters weakens the inference that one was caused by the other, and he does not say when the written complaints to the administrator were composed or sent (*see* Am. Compl. ¶ 23), and he does not convincingly connect the June 20 letter to the attorney general with the disciplinary charge for possession of material that he does not deny having. *Cf. Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("[F]alsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment guarantee of access to the courts." (citation omitted)). The amended complaint in general fails to state the actual actors responsible for the events about which Romero complains, outside of outlining their responsibilities in the "Defendants" section. And the allegations pertaining to his final transfer after "ask[i]ng for copies of the incident reports" and other materials are bereft of any chronology at all and are otherwise conclusory, in they merely attach the label of "retaliation" without any factual support. (*See* Am. Compl. ¶ 28.) The Court cannot draw the inference of retaliation from the weak suggestion of temporal proximity provided by the amended complaint. *See Lauren W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (requiring "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link," or facts gleaned from the complaint as a whole suggesting an inference of causation)[6]; *Bennett v. Goord*, 343 F.3d 133, 138 (2d Cir. 2003) (discussing role of temporal proximity in retaliation claims).

---

[6] Although *Lauren W.* was not a prisoner case and involved an appeal from summary judgment, the Third Circuit has used its articulation of the standard in dismissal-posture prisoner cases. *See, e.g.*, *Wilkerson v. Superintendent Somerset SCI*, No. 13-4417, 2014 U.S. App. LEXIS 13899, at *5 (3d Cir. July 22, 2014) (nonprecedential per curiam); *Williams v. Sec'y Pa. Dep't of Corr.*, No. 14-1266, 2014 WL 1801630, at *3 (3d Cir. May 7, 2014) (nonprecedential per curiam).

The facts set forth fail to nudge the claim of retaliation "across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (internal quotation marks & citation omitted); *see also Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1990) ("[P]laintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). In that way, they do not materially build on or help to clarify what the Third Circuit found to be defective in the original complaint.

Finally, the Court notes that many of the party-related deficiencies from the original complaint have also carried over. Romero's claims against the defendants in their official capacities are barred by the eleventh amendment, and he fails to show how the majority of the defendants were personally involved in the alleged constitutional violations. *See Romero*, 486 F. App'x at 983 (citing *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 254 (3d Cir. 2010); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).

In sum, the amended complaint fails to state a claim upon which relief can be granted. Under the PLRA, it must be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

The only matter remaining is whether leave to further amend should be given. Generally, "in forma pauperis plaintiffs who file complaints subject to dismissal under Rule 12(b)(6) should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). The decision to allow further leave, so long as it is supported by a justifying reason, is within the Court's discretion. *Id.* at 108. Here, granting leave to further amend would be both futile and inequitable. It would be futile because Romero is plainly unable to show a valid retaliation claim on the above facts; nothing in this case suggests that any further amendment would survive PLRA screening or a motion to dismiss. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 231 (3d Cir. 2011) (equating futility with the

ability to survive a motion to dismiss). Romero has already had ample opportunity to sharpen and shape the allegations of his complaint through amendment. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (articulating factors); *Grayson*, 293 F.3d at 108 (defining the non-futility factors as showing inequitability of amendment). Hence, the Court declines to grant further leave to amend.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the amended complaint will be dismissed with prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1) and 42 U.S.C. § 1997e, for failure to state a claim. No further opportunities to amend will be granted.

An appropriate order follows.

/s/ Katharine S. Hayden
Dated: January 23, 2015                            Katharine S. Hayden, U.S.D.J.